# In the United States Court of Federal Claims

No. 11-790

Filed: January 18, 2012[1]

**TO BE PUBLISHED**

```
*************************************
                                    *
URS FEDERAL SERVICES, INC.,         *
                                    *
        Plaintiff,                  *
                                    *
v.                                  *       Competition In Contracting Act,
                                    *          31 U.S.C. § 3553;
UNITED STATES,                      *       Motion For Reconsideration;
                                    *       Override.
        Defendant,                  *
                                    *
and                                 *
                                    *
VSE CORPORATION, INC.,              *
                                    *
        Defendant-Intervenor.       *
                                    *
*************************************
```

**Kevin P. Connelly, Joshua C. Drewitz, Kelly E. Buroker, Caroline A. Keller,** Seyfarth Shaw LLP, Washington, D.C., Counsel for Plaintiff.

**A. Bondurant Eley**, United States Department of Justice, Commercial Litigation Branch, Washington, D.C., Counsel for Defendant.

**Marcia G. Madsen, David F. Dowd, Luke P. Levasseur, Andrew A. Nicely, Polly A. Myers,** Mayer Brown LLP, Washington, D.C., Counsel for Defendant-Intervenor.

---

[1] On January 10, 2012, the court forwarded a sealed copy of this Memorandum Opinion And Final Order to the parties to redact any information considered to be confidential and/or privileged, and note any editorial errors requiring correction by January 17, 2012. The parties have all indicated that no redaction of this Memorandum Opinion And Final Order is necessary.

**MEMORANDUM OPINION AND FINAL ORDER DENYING THE GOVERNMENT'S
MOTION FOR RECONSIDERATION**

**BRADEN,** *Judge*.

On December 30, 2011, the court issued a Memorandum Opinion And Final Order ruling that a November 22, 2011 "Determination & Findings" made by the Department of Treasury ("Treasury") to override a 100-day automatic stay, that became effective on November 14, 2011, when Plaintiff ("URS") filed a bid protest with the General Accounting Office ("GAO"), was arbitrary, capricious, and an abuse of discretion.  *See URS Federal Servs., Inc.* v. *United States*, __ Fed. Cl. __, No. 11-790, 2011 WL 6937459 at *10 (Dec. 30, 2011).  The relevant facts and procedural history of this case are set forth in detail in that opinion.

On January 5, 2012, the United States ("the Government") filed a Motion For Reconsideration ("Gov't Mot.").  For the reasons stated herein, the Government's January 5, 2012 Motion For Reconsideration is denied.

**I.        THE GOVERNMENT'S MOTION.**

The Government argues that the court may not issue declaratory relief under the Competition In Contracting Act, 31 U.S.C. § 3553, ("CICA"), without conducting the traditional four-factor injunctive analysis, because a declaration that an agency override is unlawful has the same effect as an injunction.  Gov't Mot. at 3; *see also* Defendant's December 9, 2011 Motion For Judgment On The Administrative Record at 25-27.

According to the Government, if the court were to conduct that analysis, URS would not be entitled to any relief, because it has suffered no harm as a result of Treasury's November 22, 2011 "Determination & Findings" authorizing an override.  Gov't Mot. at 5-6.  The only effect of the reinstatement of the automatic stay is that the Intervenor and incumbent contractor, VSE Corporation ("VSE"), will continue to perform the relevant services under a bridge contract, instead of the October 28, 2011 Contract at issue in the GAO protest.  Gov't Mot. at 5.  The Government acknowledges that the court determined that VSE stood to gain a competitive advantage as a result of the override, but faults the court for failing to specify the precise nature of this advantage.  Gov't Mot. at 6.

**II.       DISCUSSION.**

> **A.        The Court Is Not Required To Apply The Four-Factor Injunctive Test To
> Overrides.**

Congress authorized the United States Court of Federal Claims, in exercising bid protest authority, to issue either declaratory or injunctive relief.  *See* 28 U.S.C. § 1491(b)(2).  In *PGBA, LLC* v. *United States*, 389 F.3d 1219 (Fed. Cir. 2004), the United States Court of Appeals for the Federal Circuit held that where a protestor's remedial request for declaratory judgment was

"tantamount to a request for injunctive relief," the United States Court of Federal Claims was correct in applying the traditional four-factor test for injunctive relief. *Id.* at 1228. Although *PGBA* did not involve an agency override, in *Superior Helicopter LLC* v. *United States*, 78 Fed. Cl. 181 (2007), the United States Court of Federal Claims determined that *PGBA* requires an examination of the four-factor injunction test before the court can issue a declaratory judgment in the context of an agency override. *Id.* at 194. Other judges of the United States Court of Federal Claims, however, have declined to apply the injunction standard when electing to grant declaratory relief. *See PMTech, Inc.* v. *United States*, 95 Fed. Cl. 330, 347-48 (2010) (discussing the different views within the court).

*PGBA* was an adjudication of the merits of a bid protest. *See PGBA*, 389 F.3d at 1222. In that case, the protestor requested *both* a declaration that the award of a contract to its competitor was "arbitrary, capricious, [and] an abuse of discretion" *and* "an order setting aside the award and thereby stopping performance." *Id.* at 1228. Our appellate court determined that, *taken together*, these two requests would be "tantamount to a request for injunctive relief." *Id.* But, as *Superior Helicopter* acknowledged, there is a critical difference between injunctive relief and declaratory relief in an override case, *i.e.*, "an injunction [unlike declaratory relief] would require the [federal agency] to seek the court's permission before issuing any subsequent override." 78 Fed. Cl. at 194 n.26.

For this reason, in *Chapman Law Firm Co.* v. *United States*, 65 Fed. Cl. 422 (2005) the United States Court of Federal Claims determined that *PGBA*'s holding did not extend to override cases:

> Congress did not require any evaluation of injunctive relief factors as a prerequisite to a stay of contract performance upon the filing of a protest with the GAO. Thus, it would be contrary to the legislative scheme to impose such an additional requirement, upon finding that an agency override determination lacks validity, in order to reinstate the statutory stay applicable during the GAO protest period. Declaratory relief preserves the scheme that Congress enacted.

*Id.* at 424.

The court has determined that the reasoning in *Chapman* is applicable in this case. By enacting the CICA, Congress made clear that it viewed the competitive harm imposed by an override to be severe; hence, the imposition of the *automatic* stay as a "strong enforcement mechanism." H.R. Conf. Rep. No. 98-861 at 1435 (1984). In addition, Congress has the power to specify when injuries may rise to the level of "irreparable." *Cf. Massachusetts* v. *EPA*, 549 U.S. 497, 516 ("'Congress has the power to define injuries[.]'" (*quoting Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 580 (Kennedy, J. concurring))). Congress authorized the court to issue either a declaration or an injunction in cases arising under 28 U.S.C. § 1491(b)(2). Where the court deems a declaratory judgment is the appropriate relief, the imposition of standards for injunctive relief are not required, nor did *PGBA* so rule. *See PGBA*, 389 F.3d at 1228 (only affirming the trial court's injunctive analysis).

**B.**     **Even Applying The Four-Factor Injunction Test, Plaintiff Would Be Entitled To Injunctive Relief.**

In its briefing, the Government also misstates that URS's burden requires it to establish the facts relevant to a preliminary injunction, although declaratory relief is akin to a *permanent* injunction. *See* Gov't Mot. at 5 (urging the court to apply the four-factor test for a preliminary injunction). The United States Supreme Court recently restated in *eBay Inc.* v. *MercExchange, LLC*, 547 U.S. 388 (2006), that the relevant factors a litigant must establish for a permanent injunction include:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.* at 391.

Assuming, *arguendo*, that injunctive factors are relevant, the court has determined that URS will suffer irreparable competitive injury that is not appropriate for monetary damages, because of the difficulty of quantifying the appropriate amount. *See URS Federal Servs.*, 2011 WL 6937459 at *9; *see also Robert Bosch LLC* v. *Pylon Mfg. Corp.*, 659 F.3d 1142, 1151-52 (Fed. Cir. 2011) (observing that competitive harm can constitute an irreparable injury, even where the harm does not threaten the "core" of a plaintiff's business). For this reason, Congress decided that the appropriate remedy in such circumstances was an automatic stay. *See* H.R. Conf. Rep. No. 98-861 at 1435. As for the balancing of hardships, although Treasury may be required to pay more to VSE in this *particular* procurement, Congress has determined that the public benefits from a competitive procurement system, insured by the "strong enforcement mechanism" of the automatic stay, are more important. *See* H.R. Cong. Rep. No. 98-861 at 1435; *see also Reilly's Wholesale Produce* v. *United States*, 73 Fed. Cl. 705, 710 (2006) ("[T]he automatic stay is intended to preserve the status quo during the pendency of the protest so that an agency would not cavalierly disregard GAO's recommendations to cancel the challenged award, thereby preserving competition in contracting and ensuring a fair and effective process at the GAO." (internal quotation marks omitted)). Moreover, in this case, Treasury's contention that it will suffer a harmful interruption of services is unsupported.

The United States Supreme Court has stated that "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger* v. *Romero-Barcelo*, 456 U.S. 305, 312 (1982). As explained in the court's December 30, 2011 Memorandum Opinion, Congress has determined that the public interest is served by the imposition of an automatic stay to allow the GAO an opportunity to ascertain the merits of a bid protest. This general rule is to be overridden only where the federal agency can establish "urgent and compelling" or "best interests" circumstances justifying imposition of an override. *See URS Federal Servs.*, 2011 WL 6937459 at **5, 8. In this case, the Government's primary argument is that the court should not set aside an agency

4

override, where the override will save the agency money.  The Government appropriately is concerned about the costs of paying a higher price to VSE under an interim bridge contract than would be required under the October 28, 2011 Contract.  This situation, however, is entirely one brought about by Treasury's failure properly to administer this procurement by anticipating and addressing this issue much earlier in this 19-month long procurement.[2]  Treasury's transparent use of its override authority to remedy its malfeasance is not in the "best interests" of the agency or the public.

## III.      CONCLUSION.

For these reasons, the Government's January 5, 2012 Motion For Reconsideration is denied, as the court's December 30, 2011 Order was not "based upon manifest error of law, or mistake of fact."  *Hi-Shear Tech. Corp.* v. *United States*, 55 Fed. Cl. 418, 420 (2003).

**IT IS SO ORDERED.**

s/Susan G. Braden
**SUSAN G. BRADEN**
**Judge**

---

[2] As explained in the court's December 30, 2011 Memorandum Opinion, Treasury could have exercised a pre-existing option to require VSE to perform under a bridge contract, thereby allowing time to negotiate a more favorable temporary arrangement for the remainder of the automatic stay.  *See URS Federal Servs.*, 2011 WL 6937459 at *9.  Treasury, however, dropped the ball and attempted to solve this problem by instituting a baseless override.  Moreover, Treasury never even bothered to request that the GAO expedite its evaluation of URS's November 14, 2011 protest before deciding to override the automatic stay.